IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH SESSION, 1996

FILED

August 1, 1996

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9507-CR-00217 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. J. RANDALL WYATT, JR. |
| JOHN V. WOODRUFF, | ) | PRESIDING JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal) |

FOR THE APPELLANT:

MARK FISHBURN
Attorney at Law
Nashville, TN  37201

FOR THE APPELLEE:

CHARLES W. BURSON
Attorney General and Reporter

CHRISTINA SHEVALIER
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243

VICTOR S. JOHNSON
District Attorney General

THOMAS THURMAN
Assistant District Attorney
222 Second Avenue South
Nashville, TN  37201

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

A Davidson County Criminal Court jury found Appellant John V. Woodruff guilty of felony murder, especially aggravated robbery, especially aggravated kidnapping, and first degree murder. Appellant received a life sentence for each murder conviction and a twenty year sentence for both the especially aggravated robbery conviction and the especially aggravated kidnapping conviction. The life sentences were ordered to run consecutive to each other, and the sentences for robbery and kidnapping were ordered to run concurrent with each other and with the life sentence for first degree murder. In this appeal as of right, Appellant presents the following issues for review: (1) whether the trial court erred in allowing the introduction of evidence of sexual assault upon one of the victims; (2) whether the trial court erred in denying a request for a jury instruction on the lesser included offense of criminal attempt to commit especially aggravated robbery; (3) whether the evidence presented at trial is legally sufficient to sustain convictions for especially aggravated robbery and first degree murder; and (4) whether the trial court erred in ordering consecutive life sentences.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

As accredited by the jury's verdict, the record reflects that the facts of this case are as follows. At approximately midnight on March 9, 1992, Appellant received a phone call from Walter Kendricks, during which Kendricks asked him if he would like to participate in a robbery. Kendricks

stated that the robbery did not involve a store but an individual. Appellant agreed to participate in the robbery, borrowed his girlfriend's car, and drove to Kendricks' home. Appellant then drove Kendricks and himself to the home of John Rucker, Appellant's brother-in-law. Appellant asked Rucker if he could borrow his gun, explaining that they intended to rob an individual of ten to fifteen thousand dollars. Rucker agreed to the use of his gun and stated that he wanted to participate in the robbery. Before leaving, Jermaine Ferguson arrived and stated that he too wanted to participate in the robbery. The four men then left Rucker's home and proceeded to the Twelve Oaks Motel in Berry Hill. As instructed by Kendricks, Appellant drove around the motel twice, parked the car, and turned off the headlights. According to plan, Kendricks and Ferguson entered one of the motel rooms, and Appellant and Rucker followed a few minutes later.

When Appellant and Rucker entered the room, Ferguson was standing over one of the beds pointing a gun at Mr. Derrick Grant. Ms. Reba Benford was also present in the room and was positioned on the other bed. Kendricks asked Mr. Grant where the money was, and Mr. Grant responded that it was no longer there. Ms. Benford was then taken into the bathroom upon Kendricks' instruction. Appellant and Kendricks began searching the room for the money. At some point, Appellant entered the bathroom and spoke to Ms. Benford, promising her that she would not be hurt. While Appellant was in the bathroom, Kendricks found and took possession of three hundred dollars.

Having discovered the three hundred dollars, Kendricks' told Appellant that they had to kill Mr. Grant. In response to Kendricks' statement, Appellant

-3-

told Rucker that it was time for them to go; however, neither man left the motel room.  As Mr. Grant lay on his stomach, Kendricks bound his wrists with a shoelace and his ankles with telephone cord.  Kendricks then injected an unidentified substance into Mr. Grant's arm, maintaining that the injection would not kill him but only put him to sleep.  Soon thereafter, Kendricks determined that the injection was not going to achieve the desired result and began searching for something else to inject.  Appellant returned to the bathroom where Ms. Benford remained.  By this point, both Kendricks and Ferguson had stated that they wanted to have sexual intercourse with Ms. Benford.

When Appellant came out of the bathroom, Mr. Grant was still on the bed but was now covered with a blanket.  The four men agreed that it was time to leave, and Appellant suggested that they tie up Ms. Benford and leave her in the motel room for someone to find.  Kendricks however wanted to take her with them and instructed Appellant to retrieve her from the bathroom. Appellant did so, and the group left the motel.

At approximately 2:30 a.m., Officer John Parks of the Berry Hill Police Department noticed two black males sitting in a dark blue, four-door sedan parked to the side of the Twelve Oaks Motel.  After observing the "suspicious" vehicle from a distance for a period of time, Officer Parks witnessed three or four black males and a black female get into the vehicle and leave the motel. The female did not appear to be held against her will.  Officer Parks followed the vehicle for a while but made no effort to stop it due to a lack of probable cause to warrant such action.  Eventually, he returned to his regular patrol.

-4-

Ms. Benford was eventually dropped off on a street near Reservoir Park. As Appellant drove away, Kendricks stated, "we gotta get her, we gotta get her." Appellant then pulled over, and Kendricks and Ferguson exited the vehicle. After a "long" period of time had passed, Appellant and Rucker, still sitting in the car, heard gun shots. At Rucker's behest, Appellant started the car and began turning it around so that they could leave. While doing so, Kendricks and Ferguson returned and got in the car. Ferguson told Appellant that Kendricks had engaged in sexual intercourse with Ms. Benford. Appellant drove away from the park, eventually dropping the other three men off and returning home.

Between the hours of 2:00 and 3:30 a.m. on March 9, 1992, two individuals in separate residences near Reservoir Park were awakened by noises coming from the park. Ms. Stacey Berry heard a female voice calling out for help followed by gunshots. Ms. Kate Muir heard an initial, "unusually loud" gunshot followed by three or four more gunshots. Neither saw anything.

At approximately 6:00 a.m on that same day, the fire department received a 911 call regarding a possible shooting in the park. An emergency medical technician from the fire department found the body of Ms. Benford lying in the middle of the park with a gunshot wound to the head. Medical evidence later showed that Ms. Benford had been shot twice, suffering two entrance wounds and two exit wounds. No bullets were recovered from the body. One of the wounds was a near gunshot wound to the left temple. The other wound was a distant gunshot wound behind the left ear. According to medical evidence, both wounds would have been fatal, but an examination of

-5-

the body did not reveal which shot occurred first. The time of death was established to be between 2:30 and 3:00 a.m.

Law enforcement authorities arrived at the park soon after the fire department and secured the crime scene. Authorities found Derrick Grant's driver license approximately thirty yards from the body. Authorities also found and collected as evidence three .45 caliber shell casings, a bullet, and a cigarette lighter. Between 5:00 and 6:00 p.m. that same day, authorities found Mr. Grant's car in the parking lot of the Twelve Oaks Motel. Believing him to be a possible suspect, authorities entered his motel room and found his body on one of the beds, covered with a bedspread. His ankles and right arm were bound with telephone cord, and his wrists were bound with a shoelace. Another piece of shoelace was tied around his neck. Medical evidence later revealed that the cause of death was ligature strangulation. He appeared to have been dead for more than twenty-four hours from the time he was found and probably died a short time before Ms. Benford. He tested positive for trace amounts of cocaine as well as for trace amounts of cold remedy. Except for two superficial incisions on the left side of the front of his neck, there was no evidence of an injection having been administered.

Based on the observations of Officer Parks at the Twelve Oaks Motel, law enforcement authorities were advised to be on the lookout for a damaged, dark-colored Ford. At approximately 2:00 a.m. on March 12, 1992, Officer Rick Lemance of the Metropolitan Police Department observed a vehicle matching this description. He stopped the car and ascertained the occupants to be Ms. Marlena Buford, Rucker, and Appellant. Officer Lemance patted

each of the occupants down but did not detain them any further.  He reported the stop to the officers investigating the murders.  Subsequent to the stop, Appellant and Rucker were interviewed separately regarding their possible involvement in the crimes.  Appellant stated that, on the night in question, he borrowed a car, purchased two-and-a-half pints of gin, and drove around east Nashville.  As a result of the interview with Rucker, authorities developed Kendricks as a suspect and eventually recovered a .45 caliber automatic handgun, later identified as the weapon used to kill Ms. Benford.  Appellant was interviewed again and, this time, gave authorities a statement detailing his involvement in the offenses.  He was subsequently arrested and indicted on two counts of first degree murder, two counts of felony murder, one count of especially aggravated robbery, and one count of especially aggravated kidnapping.

## II.  ADMISSION OF SEXUAL ASSAULT EVIDENCE

Appellant first alleges that the trial court erred in allowing the introduction of evidence of sexual assault upon Ms. Benford.  In a pre-trial motion, Appellant objected to the introduction of any evidence suggesting that Ms. Benford was sexually assaulted on the night that she was murdered.  The trial court denied the motion, concluding that the evidence corroborated Appellant's own statement regarding the incident.  At trial, Dr. Mona Gretel Case Harlan, medical examiner and witness for the State, testified that she found sperm on the anal, oral, and vaginal swabs taken from Ms. Benford during the course of her autopsy.  Appellant argues that evidence of a sexual assault upon Ms. Benford should have been excluded because it was irrelevant.  Appellant further argues that, even if this evidence was relevant, it

should have been excluded because its probative value was substantially outweighed by its prejudicial impact and its tendency to mislead the jury.

Appellant was charged with the first degree murder of Ms. Benford under the theory that he was criminally responsible for the actions of Kendricks and Ferguson. See Tenn. Code Ann. § 39-11-402(2). In establishing that Appellant acted with intent to assist or promote the killing, the State relied upon Appellant's own inculpatory statement to authorities. However, as argued by Appellant in another issue, the corpus delicti of a crime cannot be established by an inculpatory statement alone. See State v. Ervin, 731 S.W.2d 70, 71 (Tenn. Crim. App. 1986). Some independent evidence of the corpus delicti is necessary to corroborate the inculpatory statement. Id. During his interview with authorities, Appellant stated that Kendricks wanted to have sexual intercourse with Ms. Benford, that Kendricks and Ferguson exited the car after releasing Ms. Benford in the park, and that Ferguson reported that Kendricks had engaged in sexual intercourse with Ms. Benford before the shooting. Testimony from the medical examiner that semen was found in the victim tends to corroborate Appellant's inculpatory statement.

The Tennessee Rules of Evidence provide the following:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Tenn. R. Evid. 401.

All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules,

or other rules or lawsof general application in the courts of Tennessee. Evidence which is not relevant is not admissible.

Id. 402.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Id. 403.

As Appellant seems to concede in his brief, evidence of a sexual assault upon Ms. Benford is relevant to the jury's determination of the premeditated first degree murder charge. The medical examiner's testimony makes more probable the fact that the killing was premeditated, intentional, and deliberate. Furthermore, in light of what the jury already knew about the sexual assault upon Ms. Benford from the introduction of Appellant's statement, it could not have come as a shock that semen was found in the victim. As a result, we are not persuaded that the prejudicial impact of this testimony is sufficient to outweigh its probity. Therefore, the admission of this evidence does not warrant reversal.

### III.  JURY INSTRUCTION

Appellant also alleges that the trial court erred in denying his request for a jury instruction on the lesser included offense of criminal attempt to commit especially aggravated robbery. Appellant argues that the intended robbery failed, resulting only in an attempted robbery. Appellant concedes that Kendricks had three hundred dollars in his possession while at the motel and that authorities recovered a lion's head ring, later identified as belonging to Mr. Grant, from Kendricks' apartment; however, he submits that the State

presented no direct evidence that any money or any jewelry was actually taken from either victim on the morning in question.  As a result, he contends that the jury could have reasonably inferred that nothing was taken from either of the victims.  Appellant maintains that, based on the fact that the jury could have concluded that no robbery occurred, the trial court should have given a jury instruction on the offense of criminal attempt to commit especially aggravated robbery.

Where two or more grades or classes of offense may be included in the indictment, it is the duty of the trial court "to charge the jury as to all of the law of each offense included in the indictment . . . ." Tenn. Code Ann. § 40-18-110(a) (1990).  The Tennessee Rules of Criminal Procedure provide that a "defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." Tenn. R. Crim. P. 31(c).  Additionally, a defendant is entitled to a jury instruction on all lesser included offenses where "any facts . . . are susceptible of inferring guilt of any lesser included offense." State v. Wright, 618 S.W.2d 310,315 (Tenn. Crim. App. 1981).  In light of the foregoing, the Tennessee Supreme Court has recently concluded as follows:

[P]ursuant to our statute, rule, and case law interpretations, defendants are entitled to jury instructions on all lesser included offenses . . . and on all offenses which are a lesser grade or class of the charged offense, if the evidence would support a conviction for the offense. The authorizing statute and rule ensure that each defendant has fair and reasonable notice of the charges and an opportunity to defend against them. It preserves a defendant's right to an instruction on all lesser offenses necessarily included in the offense charged in the indictment unless there is no proof in the record which would support the instruction. It allows the jury to consider all relevant offenses in determining the appropriate offense, if any, for conviction.

-10-

State v. Trusty, 919 S.W.2d 30, 311 (Tenn. 1996).

Here, the evidence fails to support a conviction for attempted robbery. Commenting on their search of the motel room for money, Appellant stated that, while he was not sure where the money had been located, "[Kendricks] found the three hundred dollars." Appellant further stated that it made no sense that the victims were killed for such a small amount of money. Additionally, authorities recovered a lion's head ring from Kendricks' apartment. At trial, both Ms. Nina Grant, Mr. Grant's sister, and Ms. Lesha Owens, Mr. Grant's girlfriend, identified the ring as belonging to Mr. Grant. The record clearly shows that Appellant was criminally responsible for taking, by force, at least three hundred dollars and a lion's head ring from Mr. Grant. Whether classified as a lesser included offense or a lesser grade of the charged offense, no evidence exists in the record permitting an inference that Appellant was guilty of only criminal attempt to commit especially aggravated robbery. Therefore, the trial court properly refused to charge the jury as to criminal attempt to commit especially aggravated robbery.

## IV. SUFFICIENCY OF THE EVIDENCE

Appellant also alleges that the evidence presented at trial is legally insufficient to sustain his convictions for first degree murder and for especially aggravated robbery. When an appeal challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the

strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, re-evaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). In a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

## A. FIRST DEGREE MURDER

First degree murder is defined as "[a]n intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1). In order to hold Appellant criminally responsible for first degree murder based upon the actions of Kendricks and Ferguson, the State must prove that, acting with the intent to promote or assist the commission of the offense, Appellant solicited, directed, aided, or attempted to aid Kendricks and Ferguson in the killing of

Ms. Benford.  See id. § 39-11-402(2).  Appellant argues that the State failed to establish the requisite intent to hold him criminally responsible for first degree murder.  He contends that, as he sat in the car, he was unaware that Kendricks and Ferguson intended to kill Ms. Benford.

By his own admission, Appellant provided both the transportation and the weapon used on the night in question.  Furthermore, he drove the vehicle that carried Ms. Benford from the motel to the park where she was killed.  According to Appellant's statement to authorities, Ms. Benford was initially released near the park; however, as Appellant drove away, Kendricks stated, "we gotta get her, we gotta get her."  In response to this statement, Appellant pulled over, and Kendricks and Ferguson exited the vehicle.  Appellant and Rucker sat in the car and waited for the other two men to return.  It was within the province of the jury to conclude that, in taking Ms. Benford from the motel in the first place and, by pulling over in response to Kendricks' statement, Appellant intended to promote or assist in the murder of Ms. Benford.  As stated previously, this Court is not free to substitute its inferences for those reached by the jury.  After viewing the evidence in the light most favorable to the State, we conclude that, based on his response to Kendricks' statement as well as his involvement in the events leading up to the murder, any rational trier of fact could have found that Appellant possessed the requisite mental state to be found guilty of first degree murder beyond a reasonable doubt.

## B.  ESPECIALLY AGGRAVATED ROBBERY

Robbery is defined as "the intentional and knowing theft of property from the person of another by violence or putting the person in fear."  Tenn. Code

Ann. § 39-13-401(a) (1990). Especially aggravated robbery is defined as robbery accomplished with a deadly weapon, where the victim suffers serious bodily injury. Id. § 39-13-403(a) (1990). Appellant argues that the State failed to sufficiently corroborate his inculpatory statements with independent evidence of the corpus delicti.

As noted earlier, it is long-standing and well-settled law in Tennessee that the corpus delicti of a crime cannot be established by inculpatory statements alone. See Ashby v. State, 139 S.W. 872, 875 (Tenn. 1911). However, only slight evidence of the corpus delicti is necessary to corroborate an inculpatory statement. State v. Ervin, 731 S.W.2d 70, 71 (Tenn. Crim App. 1986). To establish the corpus delicti of a crime, the State must prove beyond a reasonable doubt that a certain result has been produced and that the result was created through criminal agency. Id. 71-72. Whether the State has sufficiently established the corpus delicti is primarily a jury question. Id. at 71. A conviction resting primarily on the inculpatory statements of the accused must be affirmed where the record contains "substantial independent evidence tending to establish the trustworthiness of the defendant's statements." Id. (citing Opper v. United States, 348 U.S. 84, 93 (1954)).

Here, as previously stated, the State introduced a lion's head ring found in Kendricks' apartment shortly after the murders. Both Ms. Grant and Ms. Owens identified the ring as belonging to Mr. Grant. Furthermore, during his interview with authorities, Appellant stated that, soon after the murders, Kendricks had requested his help in selling some rings. The record reflects no reasonable explanation for the presence of Mr. Grant's ring in Kendricks'

-14-

apartment other than the State's theory that it was taken from Mr. Grant just before his murder. Therefore, the State has met its burden of corroborating Appellant's inculpatory statements with independent evidence.

## V. SENTENCING

Finally, Appellant alleges that the trial court erred in imposing consecutive sentences for his first degree murder conviction and his felony murder conviction. When an appeal challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determination of the trial court was correct. Tenn. Code Ann. § 40-35-401(d) (1990). However, the presumption of correctness only applies when the record demonstrates that the trial court properly considered the relevant sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a review of a sentence, this Court must consider the evidence, the presentence report, the sentencing principles, the arguments of counsel, the nature and character of the offense, mitigating and enhancement factors, any statements made by the defendant, and the potential for rehabilitation or treatment. State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993). If appellate review reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this Court must affirm the sentence, "even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993).

The trial court has the discretion to impose sentences concurrently or consecutively. Tenn. Code Ann. § 40-20-111(a) (1990). The imposition of consecutive sentences is appropriate if the defendant has been convicted of more than one offense and the trial court finds, by a preponderance of the evidence, one or more of the following criteria:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . . ;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115 (1990).

## A. RECORD OF EXTENSIVE CRIMINAL ACTIVITY

In imposing consecutive sentences, the trial court noted Appellant's record of extensive criminal activity.  See id. § 40-35-115(b)(2).  Because the trial court considered the principles, purposes, and goals of the Criminal Sentencing Reform Act of 1989, the presumption of correctness applies to the imposition of consecutive sentences on this ground.  According to the proof presented at the sentencing hearing, Appellant had six prior felony convictions.  These convictions include two counts of grand larceny, two counts of third degree burglary, and two counts of burglary of a motor vehicle.  This Court has previously held that proof of two drug offense convictions, two weapons offense convictions, and numerous misdemeanor driving offenses was sufficient to support a finding that the defendant had an extensive criminal record, giving the trial court the discretion to impose consecutive sentences.  See State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994).  The proof here is similarly sufficient to support a finding that Appellant's criminal activity has been extensive.  Based on this finding, the trial court properly imposed consecutive sentences.

## B.  DANGEROUS OFFENDER FINDING

The trial court also found that Appellant was a dangerous offender as a ground for imposing consecutive sentences.  See Tenn. Code Ann. § 40-35-115 (b)(4) (1990).  However, this finding, standing alone does not justify consecutive sentences.  A trial court may not impose consecutive sentences based upon the defendant's dangerous offender status unless the record establishes that:

> (a) the defendant's behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(b) the circumstances surrounding the commission of the offense were aggravated;

(c) consecutive sentences are necessary to protect society from further criminal conduct by the defendant;

(d) consecutive sentences reasonably relate to the severity of the offenses committed; and

(e) the sentence is in accord with the principles set forth in the Sentencing reform Act.

State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995); see also State v. Ross, No. 03C01-9404-CR-00153, 1996 WL 167723, *9 (Tenn. Crim. App. Apr. 10, 1996). It is not entirely clear from the record that the trial court considered whether consecutive sentences were necessary to protect society from further criminal conduct by Appellant and whether consecutive sentences reasonably related to the severity of the offenses committed. As a result, we make our review of the imposition of consecutive sentences on this ground under Tenn. Code Ann. § 40-35-115 (b)(4) de novo.

Clearly, the trial court was correct in finding that Appellant's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Both victims were held against their will while Appellant and the other offenders ransacked the motel room searching for money. Mr. Grant was then bound and injected with some unknown substance. When he remained conscious, his captors began searching for something else to inject. Eventually, he was strangled with a shoelace. The record reflects that these events occurred over some extended period of time. Ms. Benford was then carried away from the motel to a park. It appears from Appellant's statement as well as from circumstantial evidence

that Kendricks had sexual intercourse with Ms. Benford before shooting her twice in the head. By shooting Ms. Benford, the offenders eliminated a potential witness against them. We find that the circumstances surrounding the offenses were aggravated. Furthermore, having established that Appellant participated in the torture and strangulation of one victim, followed by the kidnapping and shooting of another victim, we also find that consecutive sentences reasonably relate to the severity of the offenses committed. Lastly, in light of the seriousness of these offenses and the fact that incarceration has failed to have an impact upon Appellant in the past, we find that consecutive sentences are necessary to protect society from further criminal conduct by Appellant. Based on these findings and in accord with the principles and purposes of the Sentencing Reform Act, we conclude that the imposition of consecutive sentences on the ground that Appellant is a dangerous offender was proper.

Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____

WILLIAM S. RUSSELL, SPECIAL JUDGE