IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2010

## STATE OF TENNESSEE v. CHARLES COX

**Direct Appeal from the Circuit Court for Madison County**
No. 09-173    Roy B. Morgan, Jr., Judge

_____

**No. W2010-00129-CCA-R3-CD  - Filed December 13, 2010**

_____

The defendant, Charles Cox, stands convicted of aggravated burglary, a Class C felony, and theft of property under $500, a Class A misdemeanor.  The trial court sentenced him to 11 months, 29 days in the county jail for the misdemeanor and to eight years as a Range II, multiple offender in the Tennessee Department of Correction for the felony, to be served concurrently. On appeal, the defendant challenges the sufficiency of the convicting evidence. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

George Morton Googe, District Public Defender, and Susan D. Korsnes, Assistant Public Defender, for the appellant, Charles Cox.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

On April 6, 2009, a Madison County grand jury indicted the defendant for aggravated burglary, a Class C felony, and theft of property under $500, a Class A misdemeanor.  The matter proceeded to trial before a jury on October 5, 2009.

At trial, Caroline Woodruff testified that she had been friends with Charles Northern for twenty years. On January 22, 2009, Ms. Woodruff received a telephone call from her sister that Mr. Northern had suffered a heart attack. She went to Mr. Northern's apartment immediately. When she arrived, the paramedics were treating him, and his brothers and girlfriend were present. After the ambulance took him to the hospital, Ms. Woodruff closed the apartment door and followed the ambulance. She testified that there was no damage to the door at that point. The hospital staff pronounced Mr. Northern to be deceased shortly after he arrived at the hospital. Ms. Woodruff testified that Mr. Northern's girlfriend asked her to lock up his apartment, so she returned to his apartment. When she arrived, she testified that she saw the defendant, whom she had known for fifteen to twenty years, leaving the apartment carrying a briefcase and a television. She thought it unusual because she had been the last person to leave the apartment and did not expect anyone to be there. Ms. Woodruff said that she stopped him, asked him why he was carrying a television out of Mr. Northern's apartment and told him that he knew better than to do that. He replied that he was taking the television because it was his uncle's house. When she told him that she knew that Mr. Northern was not his uncle and that he should not be taking things from his house, she testified that he ignored her, walked down the stairs, and began running. After Mr. Northern's girlfriend arrived, they went into his apartment. Ms. Woodruff testified that "[t]he door had been kicked in completely off the hinge . . . and the bedroom was destroyed."

On cross-examination, Ms. Woodruff testified that the briefcase was orange and that the television was a small portable set. She said that she assumed the items belonged to Mr. Northern because the defendant was carrying them out of Mr. Northern's apartment.

Jesse Northern testified that he was Charles Northern's brother. Mr. Northern said that he went to his brother's apartment on January 22, 2009, after receiving a call that his brother had passed out. When he arrived, paramedics were treating his brother. He followed the ambulance to the hospital, and after the staff pronounced his brother dead, he returned to his brother's apartment to search for Veterans' Administration paperwork. When he arrived, he noticed that someone had kicked in the bedroom door. Mr. Northern testified that his brother kept paperwork in two briefcases, but one of the briefcases was missing. A portable television was also missing. Mr. Northern said that all of the drawers in the bedroom were open, and clothes were all over the room.

On cross-examination, Mr. Northern testified that his brother had a black briefcase and a brown one. The brown one was missing. He was not aware of his brother having an orange briefcase. Mr. Northern testified that a woman named Willie Mae Rucker lived with his brother. She was at the apartment when he returned. To his knowledge, Ms. Rucker had not given the missing items to anyone.

Sergeant Douglas Manaseri, of the Jackson Police Department, testified that on January 22, 2009, he was a patrol officer assigned to the West Jackson area, which included 1180 Hollywood Avenue. He said that on January 22, at approximately 4:30 p.m., he responded to an aggravated burglary call at 1180 Hollywood Avenue, Apartment 115. Ms. Woodruff met him at the apartment, and he checked the apartment to ensure that no one was inside. Ms. Woodruff told him what she had seen and gave him a suspect's name. In his role as a crime scene technician, he processed the apartment for evidence. He noticed that the door had been forced open because the door frame was split and there were impact marks on the bottom of the door. Additionally, the sheetrock behind the door was damaged from the impact of the door. Sergeant Manaseri testified that the first room of the apartment had been ransacked and a purse was lying on the floor. He did not find any undisturbed fingerprints to process. He collected a lock blade knife as evidence because the position of the knife next to an opened briefcase indicated to him that someone had used the knife to pry open the briefcase. The parties stipulated that the crime lab was unable to find any latent prints on the knife. Sergeant Manaseri testified that he took pictures of the apartment as he found it, and he identified those photographs for the jury. He further testified that other officers took the defendant into custody within thirty minutes of his arrival at the apartment. He said that no one had recovered the missing items.

Following the close of proof and deliberations, the jury found the defendant guilty of aggravated burglary, a Class C felony, and theft of property under $500, a Class A misdemeanor. The trial court sentenced him as a Range II, multiple offender to eight years in the Tennessee Department of Correction for the felony and to eleven months and twenty-nine days in the county jail for the misdemeanor, to be served concurrently.

**Analysis**

On appeal, the defendant challenges the sufficiency of the convicting evidence. Specifically, he argues that the state did not prove that he did not have consent to enter the apartment and that the state did not prove that Charles Northern owned the items that Ms. Woodruff saw the defendant carrying.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*,

108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. *Tharpe*, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Id.* (quoting *Pruitt v. State*, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

The Tennessee Code Annotated defines aggravated burglary, in relevant part, as entering a habitation without the effective consent of the owner and with the intent to commit a felony, theft, or assault. Tenn. Code Ann. § 39-14-402(a)(1), -403(a). A habitation is defined as "any structure . . . which is designed or adapted for the overnight accommodation of persons[.]" *Id.* § 39-14-401(1)(A).

In order to uphold the defendant's conviction, the state had to prove that the defendant intended to deprive the owner of property and that the defendant knowingly obtained or exercised control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103. The state also had to prove that the value of the property was $500 or less to support a conviction for a Class A misdemeanor. Tenn. Code Ann. § 39-14-105(2). The fair market value of property is a question of fact for the jury. *See State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981).

The Tennessee Code Annotated defines "effective consent" as

-4-

assent in fact, whether express or apparent, including assent by one legally authorized to act for another. Consent is not effective when:

(A) Induced by deception or coercion;

(B) Given by a person the defendant knows is not authorized to act as an agent;

(C) Given by a person who, by reason of youth, mental disease or defect, or intoxication, is known by the defendant to be unable to make reasonable decisions regarding the subject matter; or

(D) Given solely to detect the commission of an offense[.]

Tenn. Code Ann. § 39-11-106(a)(9).

Viewed in the light most favorable to the state, the evidence showed that there was a forced entry into Charles Northern's apartment and it was ransacked. Ms. Woodruff testified that the door was not damaged when she left and that she saw the defendant carrying a briefcase and television from the apartment when she returned. The circumstantial evidence was sufficient for the jury to infer that the defendant did not have consent to enter the apartment because the door was forced open. Furthermore, the evidence was sufficient for the jury to infer that the items carried by the defendant belonged to Charles Northern because Jesse Northern testified that his brother's television set and briefcase were missing, and Ms. Woodruff testified that the defendant was carrying the items out of Mr. Northern's apartment. While the state did not present evidence regarding the value of the items, the jury was free to infer that the items had *some* value, which is sufficient to sustain the misdemeanor theft of property conviction. *See State v. Hill*, 856 S.W.2d 155, 156 (Tenn. Crim. App. 1993). We conclude that any rational jury could have found, beyond a reasonable doubt, that the defendant was guilty of aggravated burglary and theft of property under $500. Therefore, the defendant is without relief.

## Conclusion

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE

-5-