# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
January 9, 2001 Session

## STATE OF TENNESSEE v. RICKEY WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-03611      Chris Craft, Judge**

---

**No. W1999-01701-CCA-R3-CD  - Filed February 15, 2001**

---

Defendant challenges his conviction for premeditated first degree murder for which he received a sentence of life imprisonment.  He presents the following issues for our review:  (1) whether the evidence was sufficient to support the verdict; (2) whether the trial court erred in admitting evidence of a prior bad act; and (3) whether the trial court erred in admitting hearsay.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Edwin C. Lenow, Memphis, Tennessee, for the appellant, Rickey Williams.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; James A. Wax, Jr. and David N. Pritchard, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Defendant appeals his first degree murder conviction for which he received a life sentence. He attacks the sufficiency of the evidence and the admission into evidence of a prior bad act and hearsay.  We find no reversible error and affirm the judgment of the trial court.

## FACTS

It is undisputed that the victim, Algerine Bougard, was murdered in her apartment on or shortly after December 1, 1997.  It is unclear whether the defendant and the victim were actually

married, but it is clear that they had a relationship at one time. It is further clear that they were not living together during the months preceding the homicide.

Testimony at trial indicated the relationship between the defendant and the victim during the recent months preceding the homicide was far from harmonious and was, in fact, very violent. Frank Chambers testified that he was employed at the victim's apartment complex and witnessed an incident between the defendant and the victim in the summer of 1997. According to Chambers, the defendant forced his way into the apartment complex during the early morning hours after being told he could not enter. When the victim and the defendant came back to the lobby of the complex, the victim informed the defendant that he had to leave the complex. The defendant then hit the victim with an object in a brown sack, knocking her unconscious.

Officer Frank Winston investigated an incident at the victim's apartment on the night of June 30, 1997. The victim had been cut and had numerous bruises on her body. The victim was extremely "numb, upset, [and] scared" and advised the officer that the defendant had beaten and raped her. The victim stated the defendant gained entrance to her apartment through the sliding glass door, placed a knife to her throat, and forced her to have sex. A criminal charge was initiated against the defendant and was still pending at the time of the victim's murder.

Nekeisha Smith testified that she was a security guard at the complex and that on November 5, 1997, the victim came downstairs from her apartment. The victim stated she wanted to make a phone call to her husband to return her keys. According to Smith, the victim was "shaking, crying and bleeding from the head." The victim told Smith that her husband had beaten her with "some wooden crutches."

Debrah Thweatt testified that she was a nurse who tended to the victim during a November hospital stay for treatment of a chronic intestinal disorder. According to Thweatt, near the end of November 1997, she heard the victim screaming in her hospital room. Upon entering the room, Thweatt observed the defendant beating the helpless victim and demanding her purse. Thweatt was able to get between the defendant and the victim. However, the defendant was successful in securing the purse, which also contained the victim's keys. Just prior to fleeing, the defendant stated his intention to kill both the victim and Thweatt.

As a result of the June 30, 1997, incident, the victim received assistance from the Memphis Sexual Assault Resource Center. The victim remained in contact with the coordinator, Susan Parkinson, from June until the time of her death in December. The charges against the defendant were pending during this time. On December 1, 1997, the date of the victim's release from the hospital, she left a message for Parkinson indicating that "she was going home and that she was afraid and would [Parkinson] please help her."

The victim's daughter picked up the victim from the hospital on December 1, 1997, and took the victim to the victim's apartment. The victim had an extra set of apartment keys which she used to gain entrance. The daughter went to the defendant's parent's residence to pick up her mother's

purse that had been taken by the defendant at the hospital; however, the victim's apartment keys were not in the purse. The victim's battered, decomposed body was discovered in her apartment several days later.

The investigation revealed that a key to the victim's front door had been broken off in the lock. Another set of keys was found on the couch. The sliding glass door on the balcony had been forced open, and a footprint was observable on the glass. Fingerprints were lifted from the sliding glass door and from a beer can found in the kitchenette on top of the trash can. Both sets of fingerprints matched the prints of the defendant.

The pathologist testified that the victim had been stabbed and strangled; the victim's body had bruises all over it; and the victim had male ejaculate in her mouth and vagina. The pathologist also testified that the bone in her throat had been broken and healed four times before this incident. The cause of death was the stab wound with strangulation being a contributing factor.

## SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to establish his identity as the perpetrator of this offense. We respectfully disagree.

### A. Standard of Review

A defendant challenging the sufficiency of the proof has the burden of illustrating why the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We review the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979). We do not reweigh or reevaluate the evidence, but afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Evaluation of witnesses' credibility, the weight and value to be given to the evidence, and resolution of factual issues raised by the evidence is left to the trier of fact. *Id.* A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the state's witnesses, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or

hypothesis except that of guilt. <u>Tharpe</u>, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Id.* (quoting <u>Pruitt v. State</u>, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

While following the above guidelines, this Court must remember that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." <u>Marable v. State</u>, 313 S.W.2d 451, 457 (Tenn. 1958); *see also* <u>Gregory</u>, 862 S.W.2d at 577; <u>State v. Coury</u>, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985); <u>Pruitt</u>, 460 S.W.2d at 391.

## B. Analysis

Viewing the evidence in a light most favorable to the state, we conclude the evidence is more than sufficient to support the verdict. During the five months preceding the victim's murder, the defendant displayed an unrelenting pattern of violence toward the victim. The jury could conclude that on June 30, 1997, the defendant unlawfully entered the victim's residence through the sliding glass door from the balcony and beat and raped the victim. The jury could reasonably conclude that on November 5, 1997, the defendant beat the victim with crutches. The jury could reasonably conclude that at the end of November 1997, the defendant beat the bed-ridden victim in her hospital room and took her purse, which contained her keys. Furthermore, the jury could conclude that the defendant upon leaving the hospital room threatened to kill the victim. In addition, the defendant's fingerprints were found on the sliding glass door and on a can of beer on top of a trash can in the kitchenette. The jury could reasonably conclude that the key taken by the defendant was broken off in the apartment door as the victim's other set of keys was found on the couch. Based upon this evidence, the jury could reasonably conclude that the defendant intentionally, after exercising reflection and judgment, killed the victim by stabbing and strangling her. The defendant was properly convicted of premeditated first degree murder.

## PRIOR BAD ACT

The defendant contends the trial court erred in allowing Frank Chambers to testify about the defendant striking the victim in the summer of 1997. The state contends this evidence was properly admitted as a prior bad act under Tenn. R. Evid. 404(b). We agree with the state.

Tenn. R. Evid. 404(b) provides that evidence of other crimes or acts, although not admissible to prove the character of a person in order to show action in conformity with the character trait, may be admissible for other purposes. Prior to allowing such proof, the trial court should conduct a jury-out hearing, determine whether there is a material issue other than conduct conforming with the character trait, and must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b); <u>State v. West</u> 844 S.W.2d 144, 149 (Tenn. 1992).

Generally, this rule is one of exclusion, but there are exceptions. State v. Jones, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999). The generally recognized exceptions to the rule allow evidence offered to prove motive, identity, intent, absence of mistake, opportunity, or a common scheme or plan. Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). Our standard of review of the trial court's determinations under Tenn. R. Evid. 404(b) is whether the trial court's ruling was an abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).

The Tennessee Supreme Court has determined that evidence of a defendant's prior acts of violence and threats against the victim is admissible under Tenn. R. Evid. 404(b) in a murder case because these acts are relevant to showing the defendant's hostility toward the victim, the settled purpose to harm the victim, and the intent and motive for the killing. State v. Smith, 868 S.W.2d 561, 574 (Tenn. 1993).

In this case the trial court conducted a jury-out hearing, determined the evidence was relevant under Smith to establish the defendant's hostility toward the victim and intent, determined that its probative value was not outweighed by the danger of unfair prejudice, and instructed the jury as to how they should view this evidence. Under these circumstances, we conclude the trial court did not abuse its discretion in admitting this evidence. This issue is without merit.


## HEARSAY

In his final issue the defendant contends his rights to confrontation and due process were violated when "witnesses Frank Winston, Nekeisha Smith, Susan Parkinson, Debrah Thweatt and Heather Cook, testified about hearsay statements and [the] indictment [charging the defendant with assault on June 17, 1997]." The state contends this issue is waived.

In the argument portion of his brief, defendant simply alleges

> there was no way the Appellant could defend against all the hearsay statements the State introduced. Further, the Appellant was denied the right to confront and cross-examine the witnesses who had accusatory allegations, and thereby his rights under the Confrontation and Due Process Clauses of the United States and Tennessee Constitutions were violated.

The defendant does not identify the testimony of any particular witness and does not in any way identify what portion of his or her testimony was objectionable. This issue is waived since the defendant has failed to make appropriate references to the record. Tenn. Crim. App. Rule 10(b); State v. Schaller, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); State v. Turner, 919 S.W.2d 346, 358 (Tenn. Crim. App. 1995); *see also* Tenn. R. App. P. 27(a)(7) and (g).

**CONCLUSION**

We conclude the evidence was sufficient to support the guilty verdict, and the trial court committed no evidentiary errors.  Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE