STATE of Tennessee, Appellee,

v.

Jerald GREGORY, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

May 6, 1993.

Carlton M. Lewis, (at trial and on appeal) and Walter T. Searcy, III, (at trial), Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, John B. Nisbet, III, Asst. Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen., Tom Thurman and Michaela Matthews, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

PEAY, Judge.

The defendant was charged in the indictment with premeditated murder, felony murder, aggravated kidnapping, aggravated rape, and armed robbery. At a jury trial he was convicted of first degree murder, aggravated kidnapping, and aggravated rape. A verdict of acquittal was later granted by the trial judge on the aggravated kidnapping conviction. For the first degree murder con-

viction the defendant received a life sentence, and on the aggravated rape conviction he received a twenty-five year consecutive sentence as a Range I standard offender.

Through this appeal as of right, the defendant presents four issues for review. In the first issue he contends that the evidence was insufficient to support the convictions for murder and for aggravated rape. In his second issue he complains that the trial court erred by allowing a witness to testify as to an encounter with the defendant on the day prior to the murder. In his third issue he contends that the prosecutor committed plain error during his final argument to the jury, and in his final issue the defendant contends that the sentence was excessive and that consecutive sentences were improper. Raising an issue of its own, the State alleges that the trial court erred in dismissing the defendant's conviction for aggravated kidnapping. After considering the record in this cause, we find that all issues are waived or without merit and, therefore, affirm the trial court.

On Sunday, June 18, 1989, the victim's husband returned home from work at approximately 6:00 p.m. He testified that he had attempted to telephone the victim at around 3:00 p.m., but she had not answered his call. He further testified that upon entering their apartment, he had found the victim in their bed and that she had appeared to be dead. At this point he left the apartment and called to neighbors for assistance. While testifying, he added that he had later found that the victim's rings had been taken.

Proof from neighbors and officers who went to the scene established that the victim had been bound at the hands with electrical cords which had been tied to a bedpost. The victim's clothes had been removed except for her bra which had been pushed above her breasts, and a shirt and necktie had been tightly wrapped around her head. Furthermore, the handles of four wooden cooking spoons had been inserted in her vagina.

Expert testimony established that the victim had been vaginally and anally raped and that she had been stabbed eight times. One of these stab wounds had severed an artery in her chest, and one had penetrated her heart. According to the chief medical exam-

iner either of these wounds alone would have been fatal. The medical examiner further testified that the victim died between 11:00 a.m. and 6:00 p.m. on June 18, 1989, that death would have occurred within five to ten minutes after the fatal wound, and that the victim would have been conscious during most of that time period.

There was a positive identification of the defendant's handprint from the bed and of his fingerprint found on a spoon on the floor at the end of the victim's bed. In addition to this proof, expert testimony was offered in connection with DNA testing, hair analysis, and comparison of bodily fluids. Opinions from the experts were that these tests were consistent with the defendant's having been the perpetrator; however, there were no positive identifications as a result of these three forms of testing. For example, the DNA expert testified that two of four profiles matched the defendant's. While adding that the other two results were not acceptable, this witness stated that the latter two results did not exclude the possibility of the defendant's being the perpetrator. The expert also gave his opinion that the chance of randomly selecting someone from the black male population who was unrelated to the defendant and had the same DNA profile would be one in eight thousand persons.

Offering further proof, the State called Kim McDaniel, who was allowed to testify concerning an encounter which she had had with the defendant on the day prior to the murder. McDaniel stated that the defendant had approached her while she was in the laundry room and that around 5:00 p.m. on that day, the defendant had knocked on her door seeking permission to use her telephone. Based on the defendant's objection, the trial judge refused to allow this witness to further relate the content of any conversations which had occurred between the defendant and her or any additional relevant evidence which the court found to be substantially outweighed by the danger of unfair prejudice.

The State also introduced evidence indicating that a struggle had taken place in the victim's apartment, that a closet had been

rummaged through, and that a travel bag belonging to the victim's spouse had been found in the defendant's room after the defendant's arrest. The proof also established that prior to her murder the victim had been to the grocery and laundry room as was her custom.

In presenting his side of the case, the defendant called three witnesses who testified as to his good character and reputation. He also offered his sister, with whom he had been staying at the apartment complex during the period of time when this crime was committed. She testified that the defendant had remained in her apartment throughout the day in question except for a period between 4:30 and 8:00 p.m., and her boyfriend corroborated this claim. In addition, she stated that when she and her boyfriend had left the apartment, the defendant had been dressed in his shorts and socks and, upon their return, had been dressed the same way.

In the defendant's first issue he contends that the evidence consisted solely of circumstantial evidence and was insufficient to find him guilty beyond a reasonable doubt of first degree murder and of aggravated rape. Through his brief the defendant simply concludes that the circumstantial evidence does not exclude every other reasonable theory except guilt. However, he fails to advance any other reasonable theory based on the facts as presented in this case.

■ When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at the trial is sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e). We do not reweigh or re-evaluate the proof and are required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

■ A defendant challenging the sufficiency of the evidence has the burden of illustrating to this Court why the proof is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982).

■ Although the evidence of the defendant's guilt is circumstantial in nature, it is a well established principle of law in this state that circumstantial evidence alone may be sufficient to support a conviction. *State v. Buttrey,* 756 S.W.2d 718, 721 (Tenn.Crim. App.1988). However, in order for this to occur, the circumstantial evidence "must be not only consistent with the guilt of the accused but it must also be inconsistent with his [or her] innocence and must exclude every other reasonable theory or hypothesis except that of guilt." *State v. Tharpe,* 726 S.W.2d 896, 900 (Tenn.1987). In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Tharpe,* 726 S.W.2d 896, 900. Moral certainty as to each element of the offense is required, but absolute certainty is not. *Tharpe,* 726 S.W.2d 896, 900.

■ While following the above guidelines, this Court must remember that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." *Marable v. State,* 203 Tenn. 440, 313 S.W.2d 451, 457 (1958); *State v. Coury,* 697 S.W.2d 373, 377 (Tenn.Crim.App.1985); *Pruitt v. State,* 3 Tenn.Crim.App. 256, 460 S.W.2d 385, 391 (1970).

■ Having reviewed the record, we find that the evidence does, in fact, exclude every reasonable theory or hypothesis except that of guilt and is more than sufficient to support the jury verdicts. This issue is obviously without merit.

In his second issue the defendant contends that the trial court erred by allowing Kim

McDaniel to testify concerning her encounter with the defendant on the day prior to the murder. According to the defendant this testimony was proof of other wrongs used to prove character or action in conformity with a character trait, and the prejudicial effect of this evidence outweighed its probative value. He concludes that the testimony should have been excluded under Tenn.R.Evid. 404(b). The State argues, and the trial court apparently held, that this evidence was relevant and admissible since its probative value was not substantially out-weighed by the danger of unfair prejudice. The trial court thus held that the testimony was not evidence of other crimes, wrongs or acts which are excluded by Tenn.R.Evid. 404.

■ At the outset we note that the defendant objected to this testimony at trial relying on Tenn.R.Evid. 403 but now relies on Tenn.R.Evid. 404. Since a defendant may not change theories from the trial court to the appellate court, he has waived this issue. *See State v. Matthews,* 805 S.W.2d 776, 781 (Tenn.Crim.App.1990); *State v. Aucoin,* 756 S.W.2d 705, 715 (Tenn.Crim.App.1988).

■ However, even if such were not true, we would still find that the testimony in question was relevant and not prohibited by Tenn.R.Evid. 404. While the defendant states that he was willing to stipulate that he had been at the apartment complex on the dates in question, this has no bearing on the admissibility of the contested evidence. The State alleged that the defendant had unsuccessfully utilized the same scheme in selecting and approaching McDaniel as had accomplished its purpose against the victim. According to McDaniel's testimony her encounter with the defendant had occurred on the day prior to this offense. In reviewing the transcript of the evidence, we find that a common scheme or plan may have linked these incidences and that the probative aspect of McDaniel's testimony was not outweighed by the danger of unfair prejudice.

■ The defendant's offer of a stipulation to having been in the area does not remove the issue of identity as the State still had to prove his identity as the assailant. The defendant obviously did not stipulate to this fact, or to even having come in contact with the victim and McDaniel's testimony was properly offered by the State to prove such.

■ The defendant further contends that the trial court failed to properly note on the record the material issue, its ruling, and the reasons for admitting this evidence. Since the defendant did not request that these matters be stated on the record he cannot now complain. Tenn.R.Evid. 404(b)(2). This issue provides no basis for reversal.

In the defendant's third issue he complains that the State committed plain error by arguing to the jury that the homicide was a "terrible, heinous, atrocious, brutal, senseless killing of one of ours." The defendant contends that this argument had the effect of appealing to sympathies and prejudices of the jury and amounted to a violation of both the United States and Tennessee Constitutions.

■ After examining the record, we find that the defendant failed to take available action to prevent or nullify the alleged harmful effect of this argument as he did not object at trial. He is, therefore, not entitled to relief. *See* T.R.A.P. 36(a). However, we further note that while perhaps imprudently spoken, we do not find that the contested statement rises to the level of error; therefore, it is certainly not plain error as argued by the defendant. This issue lacks merit.

■ Through his final issue the defendant complains that the sentence imposed was excessive and that the trial court erred in ordering his sentence for aggravated rape to run consecutively to the life sentence. He makes no reference to any specific error contained in the record and simply concludes that the present law in Tennessee does not consider a sentence proper merely because it is within the required range. We agree with the defendant's assertion. However, he fails to point out where the trial court erred but only concludes that the sentence is improper.

■ While the latter is true, Tennessee law does accord a presumption of correctness to the sentence. *See* T.C.A. § 40–35–401(d). The burden rests with the defendant to show that the sentence imposed was improper.

*State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn. Crim.App.1991). Having reviewed the record, we do not find that the evidence preponderates against the sentence imposed by the trial court especially considering the nature and characteristics of the offenses involved.

 Bringing a separate issue on appeal the State contends that the trial court erred in granting the defendant's motion for a judgment of acquittal on the defendant's conviction for aggravated kidnapping. More specifically, the State alleges that the trial court improperly applied *State v. Anthony,* 817 S.W.2d 299 (Tenn.1991). In *Anthony,* 817 S.W.2d 299, 306, our Supreme Court held that the court must determine "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." "One method of resolving this question is to ask whether defendant's conduct substantially increased [the] risk of harm over and above that necessarily present in the crime of robbery." *Anthony,* 817 S.W.2d 299, 306 (quoting from *State v. Rollins,* 605 S.W.2d 828, 830 (Tenn.Crim.App. 1980)).

According to the State's contention *Anthony* does not apply to the case under review since the defendant was not convicted of robbery. The State further attempts to distinguish *Anthony* by claiming that as the defendant had obviously intended to kill the victim, the "increased risk of harm" test should not be applied. We do not agree with the State's analysis.

While the defendant in this case was not convicted of the armed robbery charge arising from this case, we see no reason to conclude that *Anthony* applies only to cases involving robbery. After concluding that the trial court was correct in applying *Anthony,* we find that the only apparent movement of the victim by the defendant in the case presently before this Court was within the victim's apartment and was clearly incidental to the rape and murder; therefore, such movement was not significant enough, in and of itself, to warrant independent prosecution. *See Anthony,* 817 S.W.2d 299, 306. This conclusion is reached without the necessity of applying the "increased risk of harm" test; thus, we need not address the second prong of the State's attack. This issue is without merit.

Having found all issues to have been waived or to be without merit, we affirm the judgment below in all respects.

DWYER and SUMMERS, JJ., concur.