# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs January 10, 2001

## STATE OF TENNESSEE v. RICHARD CRAWFORD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-09420     W. Otis Higgs, Judge**

---

### No. W2000-00335-CCA-R3-CD - Filed March 14, 2001

---

Defendant, Richard Crawford, was convicted at a bench trial of theft of a motor vehicle valued over $10,000. On appeal, the defendant raises the following two issues for our review: (1) whether the evidence was sufficient to support his conviction for theft; and (2) whether the value of the vehicle was properly established. The judgment of the Shelby County Criminal Court is affirmed.

**Tenn. R. App. P. 3 as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. DAVID G. HAYES, J., filed a dissenting opinion.

Kendall Reeves (on appeal) and Timothy Joel Williams (at trial), Memphis, Tennessee, for the appellant, Richard Crawford.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Camille McMullen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Richard Crawford, was indicted by the Shelby County Grand Jury for the Class C felony of theft of a motor vehicle valued over $10,000 but less than $60,000. After a bench trial, the trial court found the defendant guilty as charged and sentenced him to six years confinement as a Range I standard offender.[1] On appeal, the defendant raises the following issues for our review:

---

[1] The pre-sentence report reflects that the twenty-five-year old defendant had three prior convictions for felony
(continued...)

(1) whether the evidence was sufficient to support the verdict; and (2) whether the value of the vehicle was properly established. Upon review, we affirm the judgment of the trial court.

## BACKGROUND

On December 13, 1997, Dr. John McAllister was robbed, at gunpoint, of his 1992 Fleetwood Cadillac. Dr. McAllister and his wife had just returned to their residence in Memphis and were unloading Christmas gifts when the robbery occurred. The perpetrator was not apprehended.

On February 12, 1998, Memphis Police Sgt. Jerry Webb was advised to be on the lookout for a 1992 light blue Cadillac in his assigned area of patrol. Webb was further advised that the defendant would be the driver of the vehicle. On this date, Webb stopped a vehicle matching this description. The driver of the Fleetwood Cadillac was the defendant, and defendant did not have a driver's license. The defendant informed Sgt. Webb that he worked at T & A Auto Sales on Lamar Avenue in Memphis. When asked by defense counsel if he had independent knowledge that the defendant did "in fact, buy and sell automobiles," Sgt. Webb responded, "No, Sir. I've just gone by his word." The Cadillac displayed a drive-out tag from T & A Auto Sales. The defendant informed Webb that he owned the vehicle and retrieved from the glove compartment a Tennessee title. Sgt. Webb explained that this title was for a 1989 Cadillac in someone's name other than the defendant.[2] The VIN (vehicle identification number) on the title matched the VIN on the dashboard of the Cadillac; however, Sgt. Webb testified that the metal VIN plate had "scratch marks" on it.[3]

Lt. Farris A. McCartney with the Memphis Police Department, Auto Theft Division, was

---

[1](...continued)

theft, three prior convictions for possession of items with altered serial numbers, two prior convictions for misdemeanor theft, and three prior convictions for driving on a revoked license. In addition, he had two prior probation violations. The defendant does not contest his maximum six-year sentence as a Range I standard offender.

[2]On cross-examination defense counsel exhibited to Sgt. Webb a title to a 1989 Fleetwood Cadillac issued January 22, 1998, to "Marie Coppage," purporting to be the same title shown by defendant to Sgt. Webb at the time of the stop. The VIN on this title matches the VIN on the dash plate. This title was not in the possession of the state, and the prosecuting attorney noted she had never seen the title. Sgt. Webb was unable to recall whether this was the same title he saw at the time of the stop. This title was marked for "identification" only. The title was never identified by any witness and never introduced as an exhibit. At the conclusion of all the proof, defense counsel stated he "[did] not wish to make the identification as an exhibit." The title does not have any indication on the back that it was transferred from "Marie Coppage" to the defendant or any other person. No person named "Marie Coppage" testified at trial. Since the title was never identified by any witness or introduced as an exhibit, it is not evidence. However, Sgt. Webb did testify that the title displayed to him by the defendant was for a 1989 Cadillac in someone's name other than the defendant, and the VIN matched the VIN on the dash plate.

[3]Sgt. W. E. Dawkins, who is assigned to the auto theft division, testified that he noticed nothing unusual about the VIN plate - "[it] just looked like any VIN number on any car."

called to the scene for further investigation. Lt. McCartney testified that the Cadillac had a drive-out tag from T & A Auto Sales, and he was at the time the "lead investigator on a theft ring investigating T & A Auto Sales." The defendant related to Lt. McCartney that he was the owner of the Cadillac, and that "he had purchased it in the past couple of weeks." Lt. McCartney testified that the defendant produced, as alleged proof of ownership, "some paperwork . . . it wasn't anything official as I recall. It was just a bill of sale or something . . . I don't recall seeing a title at that point." However, Lt. McCartney stated that the defendant subsequently provided a title for a 1989 Cadillac.[4] Lt. McCartney related that he observed scratch marks on the VIN plate located on the dash of the Cadillac. Further inspection of this 1992 Fleetwood Cadillac revealed that the attached VIN plate belonged to a 1989 Cadillac. McCartney also observed that several of the secondary VINs had been removed, along with the federal sticker from the driver's door, and that other VINs under the hood did not match the model of the vehicle. Lt. McCartney further testified that he questioned the defendant at the police department. Although the defendant denied that he got the car from "Little Jimmy," a "notorious auto thief," the defendant said he got the "radio and speakers" from "Little Jimmy." The defendant told Lt. McCartney that he bought the Cadillac from "a car lot," but declined to identify which car lot.

After locating other secondary VINs, officers were able to confirm that the seized vehicle was the same vehicle stolen from the McAllister residence two months previously. However, Dr. McAllister testified that the person who actually stole his car was not the defendant.

The defendant offered no proof at trial.

The trial judge, as the finder of fact, found the defendant guilty of the Class C felony of theft of property over $10,000 in value.

## SUFFICIENCY OF THE EVIDENCE

The defendant asserts that the evidence produced at trial is insufficient to support his conviction for theft of the motor vehicle. Specifically, the defendant contends that the State failed to establish that he knew the Cadillac was stolen.

### A. Standard of Review

In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999). A finding of guilt by the trial court shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e).

---

[4]We assume this is the same title shown to Sgt. Webb. *See* Footnote 1.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Id.* (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

While following the above guidelines, this Court must remember that the trier of fact decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the [trier of fact]." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958); *see also* Gregory, 862 S.W.2d at 577; State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985); Pruitt, 460 S.W.2d at 391.

**B. Theft**

In order to sustain a conviction for theft of property under the indictment in this case, the evidence must show that the defendant (1) knowingly exercised control over the vehicle; (2) he did so without the owner's effective consent; and (3) he acted with the intent to deprive the owner of his vehicle. Tenn. Code Ann. § 39-14-103. Clearly, the defendant knowingly exercised control over the vehicle without the true owner's consent. Thus, the ultimate question for our determination is whether the defendant possessed the vehicle with the requisite criminal intent to deprive the true owner of his vehicle. In short, the issue is whether the state established that the defendant knew the car was stolen.

A defendant's intent or mental state is rarely capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the offense. *See* State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). This is particularly true in theft offenses where the prosecution is initiated upon a theory of exercising control over stolen property.

It has long been recognized that the unexplained possession of recently stolen property may warrant an inference that the possessor had guilty knowledge of the theft. Barnes v. United States, 412 U.S. 837, 846-48, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973); State v. Anderson, 738 S.W.2d 200, 202 (Tenn. Crim. App. 1987). "Recently" is a relative term with no fixed meaning and depends upon the nature of the property and the facts and circumstances shown by the evidence. Anderson, 738 S.W.2d at 202. The longer the period of time since the theft the more doubtful the inference. Bush v. State, 541 S.W.2d 391, 397 (Tenn. 1976). The inference is permissive only, and it is for the trier of fact to determine whether the inference is warranted. Barnes, 412 U.S. at 845, n.9. Furthermore, the state still has the burden of establishing the defendant's knowledge that the property was stolen; the burden never shifts to the defendant. *Id.* In our view, the permissible inference is simply based upon common sense. *See id.*

## C. Trial Judge's Verdict

In announcing the guilty verdict, the trial judge explained in detail his findings. Among these findings were the following:

> (1) the defendant was driving and claimed ownership of the stolen 1992 Cadillac;
>
> (2) the defendant produced a title to a 1989 Cadillac, not a 1992 Cadillac, reflecting an owner other than himself;
>
> (3) numerous VINs, along with the federal sticker from the driver's door, had been removed;
>
> (4) the defendant never produced any documentation reflecting his ownership of the vehicle;
>
> (5) there was no credible evidence that the defendant purchased the vehicle, and no evidence how the defendant acquired the vehicle;
>
> (6) the defendant made incriminating statements upon being interviewed;
>
> (7) the defendant said he worked at T & A Auto Sales as a salesman; and
>
> (8) the defendant would have knowledge that VIN alterations had been made.

Based upon these findings, the trial judge found "beyond a reasonable doubt" that the defendant "must have been aware that he was exercising control over a vehicle that belonged to

someone else." The trial judge further stated, "I don't see any other conclusion I can come to. . . . I don't know how the proof would be any clearer. . . ." Accordingly, the trial judge found the defendant guilty of theft.

Viewing the evidence in a light most favorable to the state, as we must, we can only conclude that the findings and verdict reached by the trial court were supported by the evidence. Therefore, a rational trier of fact could reasonably conclude that the defendant knew the vehicle was stolen. The defendant was properly convicted of theft.

In reaching this conclusion, we note that the purported title produced at trial, but never introduced as an exhibit, was presented by defense counsel and was not in the possession of the state. Additionally, this title was not for a 1992 Cadillac and was in another person's name. Since the alleged title was in defendant's possession and never identified by any witness as being the exact title displayed by the defendant, we are unable to infer that the state should have subpoenaed the person on this title, and are unable to infer the person named on this title would testify favorably for the defendant.

In sustaining the guilty verdict, we emphasize that there is no indication the trial court shifted the burden of proof to the defendant, nor that it drew an adverse inference from his failure to testify. We further conclude that the state is not required to subpoena all car lot dealers in and around Shelby County to establish that none of them sold this vehicle to the defendant, in order to dispute his statement that he bought it from an unnamed "car lot." Simply put, viewing the evidence in a light most favorable to the state, the state's proof allowed the trier of fact to conclude beyond a reasonable doubt that the defendant knew the vehicle was stolen.

This issue is without merit.

**VALUATION TESTIMONY**

Defendant contends the state did not establish that the value of the vehicle was more than $10,000. More specifically, the defendant contends the owner's testimony that the "Blue Book" value was approximately $16,000 was inadmissible hearsay.

The owner of property may give his or her opinion as to the value of that property. Tenn. R. Evid. 701(b). Regardless of whether or not the owner may simply recite the "Blue Book" value, there is adequate evidence in this case to establish that the value of the Cadillac was more than $10,000. The owner testified that his mother originally purchased the vehicle for approximately $45,000 and gave the vehicle to him approximately one year prior to the theft. He further testified he settled upon the amount of $15,500 with his insurance company. If the trial court erred in allowing the owner to state the "Blue Book" value, the error was harmless. This issue is without merit.

**CONCLUSION**

Based upon our review of the record, we conclude that the evidence is sufficient to establish the defendant's guilt. We further conclude the state properly established that the value of the vehicle was more than $10,000. Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE