IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2001

## STATE OF TENNESSEE v. ANTHONY S. CARIE

**Direct Appeal from the Criminal Court for Williamson County**
**No. I-899-275     Timothy L. Easter, Judge**

—————————————

**No. M2000-02942-CCA-R3-CD - Filed October 1, 2001**

—————————————

The defendant, Anthony S. Carie, appeals his bench trial convictions for burglary of a building other than a habitation and theft over $1,000. This case presents three issues for our determination: (1) whether the evidence was sufficient to support the defendant's convictions; (2) whether the trial court erred in not examining the defendant in open court regarding his right to testify; and (3) whether the defendant received effective assistance of counsel at trial. For the reasons set forth below, we conclude there is no reversible error; therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

John H. Henderson, District Public Defender; C. Diane Crosier, Assistant District Public Defender (at trial); and C. Edward Fowlkes, Nashville, Tennessee (on appeal), for the appellant, Anthony S. Carie.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 21, 1998, the employees of Houdeshell Tire, an auto repair business in Brentwood, Tennessee, arrived at work to find a break-in had occurred while the business was closed overnight. Tools belonging to several employees were stolen, some of which were valued at over $1,000. The apparent point of entry was the bottom left panel of a door to a service bay, which had been damaged. The police concluded the panel was kicked and then pushed in to allow entry into the

building. The police conducted an investigation and found a shoe print and five fingerprints close together on the panel. The fingerprints were later identified as belonging to the defendant.

The proof showed the defendant had been a customer at Houdeshell Tire on at least two occasions prior to the burglary. He had also stopped by the business to visit friends who worked there. Employee John Reeves, a close friend of the defendant's, testified for the defense that the defendant had, once or twice, performed work on his own car in the garage. However, John Stickler, who worked at Houdeshell Tire from 1997 until 1999, testified that only technicians were allowed to work on vehicles and so, to the best of his knowledge, the defendant was not allowed to work on his vehicle there. Former service manager Christopher Hockin, who worked at the business from 1997 until 1999, testified that, to his knowledge, the defendant did not work on vehicles at the garage prior to the burglary. David Jason Kasinger, another former employee, testified that he worked at the shop during the time of the burglary and did not recall the defendant working on vehicles there. After the burglary, the defendant went to work at Houdeshell Tire for two brief periods of time.

John Stickler testified that the garage door opened from the inside. Stickler also stated that if it was necessary to open the door from the outside, one would push up on the center of the door and then reach underneath the door to push it open. He opined that there would never be a need to open the door by pushing on the damaged panel because the panels, which were not "sturdy," would pull out if used for lifting the door. Stickler further testified on cross-examination that a person would not need to touch the door from the outside when closing it because there is nothing to "grab on to" on the outside of the door. Stickler also testified that the doors to the service bays were cleaned twice each month. Hockin testified that no one would ever need to touch the damaged panel in order to open the door from the outside. John Reeves testified for the defendant that, prior to the burglary, he had observed the defendant assisting with the opening and closing of the bay door.

At trial, the defendant's statements to the police were read into evidence. In an interview with Detective Thomas Campsey, the defendant denied that he was involved in the crime. He stated that the only knowledge he had of the burglary came from his friend John Reeves, who in April 1998, after defendant had accepted a job at the business, advised him to lock up his tools at night because there had been a burglary. The defendant told the detective that prior to his employment at Houdeshell Tire, he had been a customer in the shop on two or three occasions. The defendant also said that during 1998 he had changed his own oil and checked his brakes at the business.

Detective Campsey testified that during the interview, he could not get the defendant to specify by date, month, or season the times he was present in Houdeshell Tire before his employment. The detective said the defendant would change the subject by mentioning another occasion when he could have been present in the business each time the detective would try to pin down the times when the defendant was present in the business.

Elizabeth Reid, a forensic scientist for the TBI, testified the latent fingerprints collected from the panel matched the defendant's. She further testified that while a fingerprint can last indefinitely, environmental factors such as heat and humidity can make it dissipate. She stated that if a

fingerprint were outside where it was exposed to the elements, it would be less likely to remain than if it were inside.

Following a bench trial, the defendant was convicted of burglary and theft over $1,000.[1]

## I. SUFFICIENCY OF THE EVIDENCE

The defendant attacks the sufficiency of the state's proof, claiming that the evidence against him consisted solely of circumstantial evidence; namely, the fingerprints linking him to the scene of the crime. The defendant also argues that the trial court applied an incorrect standard of proof in considering the circumstantial evidence because the trial judge, acting as the finder of fact at the bench trial, articulated he had a doubt but questioned whether the doubt was reasonable. He further claims the trial court incorrectly made an inference from an inference when it found, based on the fact that the defendant's fingerprints were on the panel, that he had committed the burglary and theft. Since all these issues raised by the defendant in his brief relate to whether the state's proof was legally sufficient to support his convictions, we will address them together.

### A. Standard of Review

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." Id. (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

While following the above guidelines, this court must remember that the finder of fact decides the weight to be given to circumstantial evidence and the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the finder of fact. Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958); see also Gregory, 862 S.W.2d at 577; State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985); Pruitt, 460 S.W.2d at 391.

In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

---

[1]The defendant was also convicted on three counts of misdemeanor theft; however, these convictions were subsequently set aside by the trial court as being barred by the statute of limitations.

## B. Analysis

Viewing the evidence in a light most favorable to the state, the defendant's fingerprints at the point of entry of the burglary are consistent with the defendant's guilt, inconsistent with his innocence, and exclude every other reasonable theory or hypothesis except guilt. The state's proof established that it was unlikely a person would have touched the outside of the bottom left panel of the door to the service bay while opening or shutting the door. One witness also testified that the doors to the service bays were cleaned routinely. TBI forensic scientist Elizabeth Reid stated that while fingerprints can remain indefinitely, they are less likely to remain if they are outside where they are exposed to the elements. Viewing the evidence in a light most favorable to the state, the evidence was sufficient to support the finding of guilty.

The defendant contends the trial judge failed to apply the proper "beyond a reasonable doubt standard" to the circumstantial evidence presented by the state. The basis for this contention is found in the following remarks made by the trial judge just prior to issuing the verdict:

> It's interesting every time I'm put in this position of trying a bench trial, its usually on a close call like this. . . . What it normally requires me to do in my own mind is to revisit the whole theory of proof beyond a reasonable doubt . . . and what that really means. . . . Occasionally, in cases like this, I might have a doubt, but again I go back to the theory of, well, is it based on a reason, a reasonable doubt?"

We disagree with the defendant's contentions and find nothing in the trial court's comments that indicate the misapplication of the proper standard of proof.

The defendant argues the trial court inferred the defendant's fingerprints were left on the door at the time of the burglary and then, based on that inference, improperly inferred that he entered the building through the panel and stole the tools. A fact may be inferred from circumstantial evidence and from the fact thus inferred, another fact may be inferred. Benton v. Snyder, 825 S.W.2d 409, 415 (Tenn. 1992). The finder of fact may arrive at "a fact" by indirect or circumstantial evidence which is "of such a character and so strong that it justifies a conclusion or a finding of fact which becomes a proper basis for another inference." *Id*. Then, this fact may serve as a basis for an inference. *Id*.

In this case, the trial court properly arrived at a fact, that the defendant entered the business, through circumstantial evidence, the defendant's fingerprints found on the damaged panel of the door. We conclude the trial court's finding that the defendant committed the burglary was also sufficient to properly support the inference that the defendant committed the theft as well.

For the foregoing reasons, we conclude that the evidence was legally sufficient to support the trial court's judgments of conviction. This issue is without merit.

## II. DEFENDANT'S RIGHT TO TESTIFY

The defendant also claims the trial court erred by failing to examine him in open court regarding his decision not to testify. In a decision issued shortly before the defendant's trial, the Tennessee Supreme Court announced requirements to be implemented prospectively in order to protect the accused's right to testify. Our supreme court stated:

> At any time before conclusion of the proof, defense counsel shall request a hearing . . . to inquire of the defendant whether the defendant has made a knowing, voluntary, and intelligent waiver of the right to testify. This hearing shall be placed on the record and shall be in the presence of the trial judge. Defense counsel is not required to engage in any particular litany, but counsel must show at a minimum that the defendant knows and understands that:
>
> > (1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;
> >
> > (2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;
> >
> > (3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

Momon v. State, 18 S.W.3d 152, 162 (Tenn. 1999). Our supreme court went on to state that the mere failure to follow these guidelines will not, in and of itself, support a claim for the deprivation of the right to testify where there is evidence in the record to establish the defendant otherwise personally waived the right. *Id*. at 163.

In the case before this court, the testimony of the defendant at the motion for new trial hearing established he personally waived his right to testify. He testified that his attorney advised him of his right to testify, and, after a discussion with her, he decided that he would not testify based upon her advice. This is unlike the situation in Momon where defense counsel unilaterally decided the defendant would not testify. *Id*. Therefore, we conclude the defendant was not deprived of his right to testify.

### III. EFFECTIVE ASSISTANCE OF COUNSEL

The defendant also argues that he did not receive effective assistance of counsel at trial because his trial counsel (1) failed to object to the introduction of evidence referencing the defendant's prior conviction, (2) failed to properly advise the defendant regarding his decision not to testify, and (3) failed to argue the law regarding the standard of proof required in circumstantial evidence cases. We respectfully disagree.

### A. Standard of Review

This court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

### B. Analysis

At trial, the state read into evidence a transcript of the defendant's statement to police. A portion of the statement made reference to a prior criminal conviction. Trial counsel objected to this portion of the statement, and the trial court sustained the objection. When the state moved to enter the transcript of the statement as an exhibit, trial counsel requested that the portion of the transcript relating to the prior conviction be redacted. The state conceded that portion of the transcript should not be considered by the trial court, and the trial court specifically stated that it would not consider it. Therefore, trial counsel was not ineffective for failing to object to the entry of the transcript into evidence.

According to the testimony of the defendant at the motion for new trial hearing, trial counsel advised him during trial that if he testified, his prior criminal history could be "brought up." Therefore, it was her recommendation that he not testify. The defendant said that, based upon her advice, he decided he would not testify. Following this discussion, the state presented the defendant's statement into evidence. The defendant claims that since the trial court was aware that he had a prior criminal history, his trial counsel should have suggested that defendant testify. However, as previously set forth, the trial court specifically said it would not consider the information contained in the transcript regarding the defendant's criminal history. Had the defendant chosen to testify, his prior convictions for burglary of an automobile and theft could have been used

to impeach his credibility. *See* Tenn.R. Evid. 609. Therefore, we are unable to conclude that trial counsel was deficient. Her actions in this regard do not constitute ineffective assistance of counsel.

The defendant finally contends the trial court applied the incorrect standard of proof regarding circumstantial evidence, and trial counsel was ineffective for failing to argue the appropriate standard. As previously stated in this opinion, we do not find that the trial court applied an incorrect standard of proof to the evidence. Accordingly, trial counsel was not deficient.

Defendant has failed to establish his claim of ineffective assistance of counsel.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court.


_____
JOE G. RILEY, JUDGE