IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 6, 2007

**STATE OF TENNESSEE v. TREVOR FORD**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-02258     Carolyn Wade Blackett, Judge**

_____

**No. W2007-00291-CCA-R3-CD  - Filed May 28, 2008**

_____

Following a jury trial, Defendant was convicted of one count of second degree murder.  On appeal, Defendant argues that the evidence used to convict him was insufficient to sustain a conviction for any offense greater than voluntary manslaughter.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. C. MCLIN, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender; Garland Ergüden, Assistant Public Defender; and Trent Hall, Assistant Public Defender, for the appellant, Trevor Ford.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; Tiffani Taylor, Assistant District Attorney General; and Dean Decandia, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I.  Background**

On January 10, 2003, Defendant and a group of friends, including the victim, met at a bar in Memphis called Rally Point.  The group played pool and drank beer.  During the evening, the victim and Defendant got into a "tussle" and punches were thrown.  The management asked them to leave the bar.  While in the parking lot, the victim and Defendant continued to "have words" with each other but were not physically assaulting each other.

Lisa Cash testified that she saw the altercation inside the bar and what happened in the parking lot.  Also, in the parking lot, Ms. Cash heard the victim threaten to kill Defendant.  After the victim and Defendant stopped yelling at each other, Defendant got into an SUV with Ms. Cash, her boyfriend, Harry Jarrett, and another woman.  After a few moments, Defendant jumped out of the

SUV and got into the car with the victim. Ms. Cash testified that about thirty to forty minutes after the victim and Defendant sped off, she received a phone call from Defendant. Defendant asked her to come and pick him up. She complied and picked him up where Defendant said the victim had dropped him off. Defendant apologized to Ms. Cash for his behavior and "teared up."

Mr. Jarrett testified that he tried to follow the victim and Defendant because he was afraid of what the victim might do. However, because the victim was driving at a high rate of speed, Mr. Jarrett was unable to keep up and lost the car. Mr. Jarrett testified that Defendant called later and that his girlfriend went to pick him up and brought him back to Mr. Jarrett's mother's home. Defendant apologized for almost hitting Mr. Jarrett when he tried to break up the fight at the bar and then Defendant started crying.

Tammie Howard testified that she was in her apartment on University Street when she noticed a car pull into the parking lot around two o'clock on the morning of January 11, 2003. Ms. Howard testified that she noticed the car because she thought it was her aunt and expected her to knock on the door. When no one knocked on the door and she heard a car horn beep, Ms. Howard got out of bed and went to the window. She stated that she saw the front of a small, gray car and a person sitting inside the car. Ms. Howard then called her fiancé to tell him to hurry home. Ms. Howard testified that she heard the car horn blow again, so she went back to the window. She could now see the person inside the car because the interior light was on. Ms. Howard then saw the man get out of the car and wipe the exterior and then open the passenger door. At this point, she stated she saw an arm "flop" out of the car. Ms. Howard was frightened and again called her fiancé to tell him to come home. Ms. Howard testified that the person she saw slumped over in the car was definitely deceased. Ms. Howard identified Defendant from a photo line-up and in court as the man she observed get out of the car and wipe down the car's exterior.

Eddie Grandberry, Ms. Howard's fiancé, testified that he spoke to Defendant in the parking lot when he (Mr. Grandberry) arrived home. Mr. Grandberry told Defendant he could not park the car in the lot and that he would have to move it. Mr. Grandberry testified that the Defendant complied and drove away. Mr. Grandberry also identified Defendant in a photo array and in court.

Officer Ken Fox responded to a 911 call about a dead person in a car. The car was located outside Ms. Howard's bedroom window and she stated from her bedroom she could "see straight through the car." He found the victim's body slumped over in the front seat of a gray Ford Focus. Officer Fox found cash, marijuana, and a CD player in the vehicle.

Dr. O.C. Smith performed the autopsy and testified that the victim was shot twice. One of the shots was fatal. Dr. Smith testified that the victim tested positive for cocaine and his blood alcohol content was .14.

On January 12, 2003, Sergeants Eric Hutchinson and Timothy Sims took Defendant's statement. Sergeant Sims passed away before the trial so only Sergeant Hutchinson testified. Sergeant Hutchinson testified that Defendant was cooperative and expressed remorse. Sergeant Hutchinson read Defendant's statement into evidence. In his statement, Defendant told the officers that he was responsible for the victim's death and that he was trying to protect himself. Defendant

also said that he knew the victim kept a gun under his seat and he believed that the victim was reaching for it. Defendant then stated that he and the victim began "tussling and arguing" in the car and that the victim grabbed for Defendant's gun. During this altercation the gun went off twice. Defendant said he jumped out and ran away, but then returned to the car and found the victim alive. Defendant stated that he panicked and drove the car into another parking lot and called Ms. Cash for a ride. Defendant told the officers he was scared to call 911. Defendant ended his statement by saying he was sorry and that he was "just trying to protect myself."

Defendant did not testify at trial, nor did he offer any other proof.

## II. Analysis

Defendant's sole argument on appeal is that there was insufficient evidence to sustain a conviction for any offense greater than voluntary manslaughter. Defendant was convicted of second degree murder. Second degree murder is "the knowing killing of another." T.C.A. § 39-13-210(a) (2003). Regarding second degree murder, a "result of conduct" offense, State v. Ducker, 27 S.W.3d 889, 896 (Tenn.2000), "knowingly" is defined as being aware that a person's is "reasonably certain to cause the result." T.C.A. § 39-11-302(b). Voluntary manslaughter is "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a person to act in an irrational manner." T.C.A. § 39-13-211(a).

In reviewing Defendant's challenge to the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560, 573 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

In State v. Johnson, 909 S.W.2d 461 (Tenn. Crim. App. 1995), this Court dealt with the issue of a second degree murder conviction versus a voluntary manslaughter conviction. In that case, the defendant based his argument on mutual combat. However, the jury did not agree and found him guilty of second degree murder. We determined that "whether the acts constitute a knowing killing (second degree murder) or a killing due to 'adequate provocation' (voluntary manslaughter) is a question for the jury." Johnson, 909 S.W.2d at 464.

In the instant case, it was well within the jury's prerogative to find Defendant guilty of second degree murder. The jury heard the evidence and chose to reject the assertion that Defendant shot the victim during a fight. The jury instead believed that Defendant knowingly shot the victim. In State v. Williams, 38 S.W.3d 532, 239 (Tenn. 2001), our Supreme Court affirmed this Court's holding in Johnson restating that it is a jury question as to whether a killing was knowing or the result of sufficient provocation. Great weight is given to the jury verdict in a criminal trial; it accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)(citation omitted); see also State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

The evidence presented in the instant case allowed the jury to determine whether Defendant shot the victim knowingly or as a result of adequate provocation. The evidence showed that Defendant and the victim had argued all night. When the group was leaving the bar, Defendant chose to get out of the car he was in and get into the victim's car. Further, before Defendant got into the car with the victim, Defendant retrieved his gun from another vehicle. Also, the fact that there were two gunshots permits an inference by the jury that the shooting did not occur as a result of a "tussle." Lastly, Defendant admitted in his statement to police that the victim was alive after the shooting and that he did not call 911 or seek other assistance. Because the jury is the judge of the facts of a case and in light of our holding in Johnson, there was sufficient evidence to convict Defendant of second degree murder. Accordingly, Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-4-