# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. DAVID L. JOHNSON

### Direct Appeal from the Circuit Court for Obion County
### No. 1-285     William B. Acree, Jr., Judge

---

### No. W2002-00935-CCA-R3-CD  -  Filed September 25, 2003

---

A jury convicted the appellant of two counts of attempted first degree murder.  The trial court imposed concurrent twenty-five-year sentences on each count.  On appeal, the appellant argues (1) the evidence was insufficient to support his convictions, and (2) his sentences are excessive.  We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Joseph P. Atnip, District Public Defender; William K. Randolph, Assistant District Public Defender (at trial and on appeal); and Clifford K. McGown, Jr., Waverly, Tennessee (on appeal), for the appellant, David L. Johnson.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin D. McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On August 6, 2001, the victims, Robbie Upchurch and Reggie Jordan, were shot on the front porch of Mr. Upchurch's home in Union City, Tennessee.  Mr. Upchurch was wounded in the leg.  Mr. Jordan was shot in the back and is paralyzed below the waist.

Mr. Upchurch and Mr. Jordan testified that at about 10:00 p.m., just prior to the shooting, they drove to Mr. Upchurch's house in a Camaro.  They stated that as they approached Mr. Upchurch's house, they saw the appellant in a vehicle with Josh McElrath, Jeffrey Shields, Willie Vaughn, and Mario McElrath.  The victims said they first saw the other vehicle at an intersection near Mr. Upchurch's home.  According to Mr. Upchurch, the occupants of the other vehicle stared as he turned left toward his home.  The victims testified they saw the other car a second time when it traveled past Mr. Upchurch's house on Home Street.

The victims testified they pulled into Mr. Upchurch's driveway, exited the Camaro, and walked onto the porch. Mr. Upchurch stated he then heard three gunshots, the first striking him in the leg. Mr. Jordan said he heard five or six shots, one of which struck him in the back. Neither victim saw the shooter. Mr. Upchurch said he did not know why the appellant would shoot him, but speculated it was because he was "from out of town" and the appellant's girlfriend liked him.

Mario McElrath and Jeffrey Shields testified that on the night of the shooting, they were in the car with the appellant, Willie Vaughn, and Josh McElrath, who was driving. Mario McElrath stated that when they drove past a Camaro, the appellant commented, "There goes [Upchurch]." Both Mr. Shields and Mario McElrath said that when they saw the Camaro traveling on Home Street, the appellant told Josh McElrath to pull over. Both testified Josh McElrath turned left on College Street and stopped near Counce's Grocery Store. They testified everyone exited the car except Josh McElrath, but only the appellant went behind the store.

Mr. Shields stated he saw the appellant jump a fence, and Mario McElrath indicated he heard the appellant scale the fence. Both witnesses said they heard gunshots seconds later. Mario McElrath testified the appellant returned carrying a black automatic pistol that was "[a]bout like a nine millimeter," and said, "I shot one of 'em." Mr. Shields confirmed the appellant was carrying a black pistol and stated the appellant said, "Two for one ain't bad."

Sonya Polk and Latasha Buchanan testified they shared a home with Mr. Upchurch. The women stated that at the time of the shooting, they were in the house with six children between the ages of four and ten. According to Ms. Polk, she heard more than four gunshots as she was reading to three of the children in the front bedroom at about 10:00 p.m. Ms. Buchanan indicated she heard more than four shots in rapid succession. Both women confirmed Mr. Upchurch and Mr. Jordan were wounded, but neither of them saw who fired the shots.

Lt. Rick Kelly of the Union City Police Department testified he investigated the crime scene and found evidence indicating at least five rounds were fired. In addition to two nine millimeter shell casings found nineteen feet from the house, he found bullet holes in the window air conditioner, the rail of the front porch, and the foundation of the house. Lt. Kelly further testified that Mr. Upchurch's house was located next to Counce's Grocery, and there was a fence between the house and the store. According to Lt. Kelly, the appellant gave a statement in which he said that on the night of the offense, he was at home until approximately 10:15 p.m., when he went to a friend's house where "Jeff Shields," "Josh," and another person were watching television. The appellant indicated he heard gunshots in the alley and saw a Camero driving away.

TBI forensic scientist Terri Arnie testified the two shell casings found by Lt. Kelly at the crime scene came from the same nine millimeter weapon. She also stated that a bullet recovered from the crime scene was a nine millimeter caliber bullet.

The jury convicted the appellant of two counts of attempted first degree murder. The trial court sentenced the appellant to the maximum sentence of twenty-five years for each conviction and ordered the sentences to run concurrently.

# I.  SUFFICIENCY OF THE EVIDENCE

The appellant argues the evidence was insufficient to support his convictions because there was no direct evidence he fired the shots, and the firearm used to commit the offenses was not recovered.  We do not agree.

This court does not reweigh or reevaluate the evidence in determining sufficiency.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  A jury verdict, once approved by the trial judge, accredits the state's witnesses and resolves all conflicts in favor of the state.  State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994).  Accordingly, the state is entitled to the strongest legitimate view of the evidence and all legitimate and reasonable inferences which may be drawn therefrom.  Id.  It is our duty to affirm the conviction if the evidence, viewed under the appropriate standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt.  See Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

Although the evidence of the appellant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction.  State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).  The circumstantial evidence, however, must exclude every other reasonable theory or hypothesis other than guilt.  Tharpe, 726 S.W.2d at 900.   In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the appellant] is the one who committed the crime."  Id. (Citations omitted).

The victims testified that just prior to the shooting, they observed the appellant in a car near Mr. Upchurch's house in the company of state witnesses Jeffrey Shields and Mario McElrath.  Mr. Shields and Mr. McElrath testified they were in the car with the appellant when the appellant told the driver to stop the car near Counce's Grocery, next door to Mr. Upchurch's home.  Both stated they observed the appellant go behind the grocery, where he climbed the fence between the store and the house.  Seconds later, they heard gunshots.  Both witnesses testified the appellant returned carrying a gun and made statements to the effect that he had shot one or both of the victims.  Mario McElrath further indicated the appellant's gun appeared to be a nine millimeter.  The state's proof established the shots were fired from a nine millimeter weapon.  The fact that the weapon was never found does not render the evidence insufficient.  See State v. Joseph William Wilson, No. W2001-03007-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 91, at *15 (Tenn. Crim. App. Feb. 3, 2003, at Jackson) (holding physical evidence is not a prerequisite to a conviction), perm. to app. denied (Tenn. 2003).  We conclude the proof, although circumstantial, was ample to support the jury's verdicts.

# II.  SENTENCING

The appellant also contends the twenty-five-year sentences imposed by the trial court were excessive.  He makes two arguments in support of his position: (1) the trial court improperly imposed the maximum sentences because it was disappointed that a jury in a prior case found the appellant guilty of reckless endangerment rather than aggravated assault; and (2) the trial court erred

in not considering as a mitigating circumstance that the appellant's actions were "impulsive rather than premeditated." These arguments are patently without merit.

An appellant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when an appellant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). The presumptive sentence for attempted first degree murder, a Class A felony, see Tenn. Code Ann. § 39-11-117(a)(2), is the midpoint of the range, twenty years. See id. § 40-35-210(c).

At sentencing, the trial court applied the following enhancement factors: enhancement factor (1), the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; enhancement factor (3), the offense involved more than one victim; enhancement factor (6), the personal injuries inflicted upon the victim were particularly great; enhancement factor (8), the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; enhancement factor (9), the defendant employed a firearm during the commission of the offense; enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high; enhancement factor (12), during the commission of a felony, the actions of the defendant resulted in the serious bodily injury to a victim or a person other than the intended victim; enhancement factor (13), the felony was committed while the defendant was on bail for a felony for which he was later convicted; enhancement factor (16), the crime was committed under circumstances under which the potential for bodily injury to the victim was great; enhancement factor (18), a victim, under § 39-15-402, suffered permanent impairment of physical functions; and enhancement factor (20), the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See id. § 40-35-114(1), (3), (6), (8), (9), (10), (12), (13)(A), (16), (18), (20) (1997).[1] The trial court further found no mitigating factors applied. See id. § 40-35-113 (1997). It imposed the maximum sentence of twenty-five years for each conviction, and ordered the sentences to be served concurrently with each other but consecutively to a prior sentence.

As to the appellant's contention that the trial court imposed the maximum sentence because of its disappointment with a jury verdict in an unrelated case involving the appellant, the record simply does not support this contention. Further, the jury's finding of attempted premeditated first degree murder negates the appellant's argument that his actions were "impulsive rather than premeditated."

---

[1] Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 and renumbered the enhancement factors. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). Our opinion refers to the enhancement factors as they existed at the time of sentencing as specified in Tennessee Code Annotated section 40-35-114 (1997).

The appellant does not contest any of the enhancement factors applied by the trial court. However, we question the trial court's application of enhancement factors (3), (10), (12), (16), and (18) to both convictions and enhancement factor (6) to the conviction in which Mr. Upchurch was shot in the leg. Nevertheless, we conclude the remaining enhancement factors applied by the trial court are supported by the record and amply justify the twenty-five-year sentences.

## CONCLUSION

We conclude there was sufficient evidence to support the appellant's convictions for attempted first degree murder, and the trial court properly imposed twenty-five-year sentences. Accordingly, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE