# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON
### Assigned On Briefs August 2, 2011

## STATE OF TENNESSEE v. FRANKLIN E. NEWBERN and REGINALD CURRIE

### Appeal from the Circuit Court for Dyer County
### No. 09-CR-203    R. Lee Moore, Judge

---

### No.  W2010-01402-CCA-R3-CD  - Filed November 18, 2011

---

After a jury trial, both Appellants were found guilty of possession of .5 grams or more of cocaine with the intent to sell or deliver.  As a result, they were both sentenced to fifteen years as Range II, multiple offenders.  The sentences were ordered to run consecutively to sentences for other offenses for which the Appellants had already been sentenced.  After the denial of a motion for new trial and motion for judgment of acquittal, Appellants have appealed to this Court.  On appeal, both Appellants contend that the evidence was insufficient to support the convictions.  Additionally, Appellant Currie insists that the trial court erred in denying the motion for new trial based on the "perjured testimony of a key witness."  After a review of the evidence, we determine that the evidence was sufficient to support the convictions and that Appellant Currie failed to show that the State knowingly utilized false testimony that was material to the conviction.  Accordingly, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Franklin E. Newbern and Danny H. Goodman, Jr., Tiptonville, Tennessee, for the appellant, Reginald Currie.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Officer Chris Clements of the Dyersburg Police Department received information from a reliable informant that there was drug activity taking place at 611 Peabody Street in Dyersburg. Based on the information received from the informant, Officer Clements obtained a search warrant on May 25, 2009. After receiving the warrant, Officer Clements and several other officers went to the residence to execute the warrant.

When the officers arrived, Appellant Newbern and Corey Thornton were outside the residence. Appellant Newbern was standing near a grill. Mr. Thornton was sitting in a chair on the front porch. Mr. Thornton took off running. He was pursued by one of the officers. Officer Clements and several other officers entered the house to see if there were any other people inside and to make sure that no one was destroying evidence.

When the officers entered the residence, they found Appellant Currie along with two juvenile females, B.N. and L.T.[1] Appellant Currie and L.T. were dating at the time. The officers ordered Appellant Currie to the floor. Once Appellant Currie was on the floor, officers found a bag of marijuana lying next to him. It contained about a gram of the substance, or enough to make one joint. Appellant Currie admitted ownership of the marijuana. The officers secured the occupants of the house prior to engaging in a search of the premises.

L.T. told the officers that the drugs belonged to Mr. Thornton. Appellant Currie offered to call Mr. Thornton on speaker phone. Appellant Currie spoke to someone on the phone who identified himself as "Cat."[2] During the call, Mr. Thornton said that he ran from the police because there was a warrant out for his arrest. Mr. Thornton did not admit that the drugs belonged to him during the telephone call.

Officer Clements searched the house. In the kitchen he found a little bag of what appeared to be cocaine and a set of digital scales with a cocaine-like residue on it. Officers also located $52 in cash hidden underneath a mattress in the back bedroom of the house

---

[1]Because the females were juveniles we have referred to them by their initials.

[2]"Cat" is reportedly Mr. Thornton's street name.

Appellant Currie admitted that the money belonged to him and that it was located in his bedroom. Appellant Currie was arrested.

When officers asked Appellant Currie for his address, he informed them that he lived at 611 Peabody. Appellant Newbern informed officers that he was Appellant Currie's father. Officers found certified mail at the residence addressed to Appellant Newbern. Additionally, officers found clothing in the back bedroom that would have fit Appellant Currie but not Appellant Newbern. The back bedroom was not appointed with traditional bedroom furniture; there was a mattress on the floor.

Officer Jason Cantu was one of the officers who executed the search warrant. He discovered a large bag of crack cocaine underneath the bathroom sink and a .22 pistol from between the mattress and box springs in the front bedroom.

Mr. Thornton was arrested later that evening on outstanding warrants. He did not accept ownership of the drugs.

Appellants Currie and Newbern were indicted by the Dyer County Grand Jury in June of 2009 for possession of .5 grams or more of cocaine with the intent to sell or deliver and possession of a firearm during the commission of a felony.

At trial, Mr. Thornton, who happened to be related to Appellants Currie and Newbern, recalled that on May 25, 2009, he was living with his sister in Dyersburg. Mr. Thornton visited the Appellants at 611 Peabody Street that day, hanging around on the front porch. Earlier in the day, Mr. Thornton played video games. While he was at the house, both Appellants along with Appellant Currie's girlfriend L.T. were at the house. Mr. Thornton testified that he did not go beyond the living room of the house while he was there. Further, he did not know the layout of the house.

After some time, the police pulled up outside the house. The officers jumped out with their hands on their weapons. Mr. Thornton ran from the police. Mr. Thornton got a call from Appellant Currie about fifteen to twenty minutes later. Mr. Thornton did not recall being asked about drugs during the conversation and claimed to know nothing about drugs or guns in the house.

According to Mr. Thornton, after Appellants Currie and Newbern were arrested, he started receiving pressure from his aunt, Christine Currie, to take the drug charges. Ms. Currie is the mother of Appellant Currie. Mr. Thornton claimed that she promised him "boot camp" and that she would "put money on his books." Mr. Thornton was in college at Arkansas State University at the time. Mr. Thornton admitted that he signed an affidavit in

which he claimed responsibility for the drugs and weapon but denied writing the affidavit. The affidavit also claimed that Appellants Newbern and Currie were unaware of the drugs and the guns and that Appellant Newbern did not even live at 611 Peabody Street. Mr. Thornton claimed at trial that the affidavit was false; the affidavit was prepared by Ms. Currie. He claimed that he was not in his "right mind" when he signed the affidavit.

Mr. Thornton also denied that he admitted to Appellant Currie's attorney that he was the owner of the drugs even though he acknowledged that he had come to court prepared to tell the District Attorney General that the drugs were his on the day of a pretrial hearing. At trial, Mr. Thornton adamantly denied ownership of the drugs.

At trial, the jury heard testimony from a forensic scientist who confirmed that one bag contained 1.7 grams of cocaine and the other bag contained 14.7 grams of cocaine. The total amount of cocaine had a street value of between $500 and $1,400, and would break down into about 73 "rocks." Sergeant Todd Thayer of the Dyersburg Police Department testified that this quantity of cocaine was far more than a typical user would possess for their own use.

Neither Appellant testified at trial. However, Ms. Currie testified in her son's behalf. She claimed that he lived at her home in Dyersburg and that he was at a family cookout on the day of the incident. At some point during the cookout, Appellant Currie left to take a plate to Appellant Newbern. He did not return to the picnic. Ms. Currie learned a few days later of her son's arrest. She claimed that Appellant Currie told her that the drugs belonged to Mr. Thornton.

Ms. Currie insisted that Mr. Thornton approached her after Appellants' arrest and claimed that the drugs and pistol belonged to him. Ms. Currie denied writing the affidavit that was signed by Mr. Thornton but acknowledged that the affidavit was written in one color ink and signed by Mr. Thornton in another color ink. She also agreed that the street address written on the affidavit was written in a third color ink. Instead, she claimed that Mr. Thornton approached her in late September 2009 with the written affidavit. Ms. Currie denied making promises of boot camp and money to Mr. Thornton in exchange for him taking the drug charges.

After the conclusion of the proof, the jury found Appellants guilty of possession of more than .5 grams of cocaine with the intent to sell or deliver. The trial court sentenced both Appellants to fifteen years as Range II, multiple offenders. The sentences were ordered to run consecutively to sentences for other unspecified offenses for which the Appellants had already been sentenced.

Appellants filed motions for new trial. The trial court held a hearing on the motions. At the hearing, Mr. Thornton testified that he had now signed a second affidavit that expanded on this testimony at trial. Mr. Thornton claimed that he completed the second affidavit under duress from his family. Mr. Thornton explained that he was in jail for a probation violation and spoke to Appellant Currie's attorney. The affidavit reflected what he told Appellant Currie's attorney. The second affidavit claimed that Mr. Thornton was not the owner of the drugs or weapon and that Appellant Currie had actually arrived at the house after Mr. Thornton. According to the affidavit, Mr. Thornton claimed that he warned Appellant Currie that there were drugs at the house when he arrived and advised Appellant Currie not to enter the residence. Appellant Currie entered the residence despite Mr. Thornton's warning and got into a fight with Appellant Newbern about the possession of drugs in the house.

At the hearing, Mr. Thornton testified that his second affidavit was partially false in that Appellant Currie was already at the house when he arrived. Mr. Thornton testified at the hearing that he did not go into the house and did not see any drugs. He testified that the second affidavit was the product of threats from his family and maintained that his trial testimony was truthful.

At the conclusion of the hearing, the trial court denied the motion for new trial. A timely appeal followed. The appeals from Appellants Currie and Newbern were consolidated on appeal. On appeal, Appellants argue that the evidence was insufficient. Appellant Currie also argues that he was denied a fair trial because Mr. Thornton committed perjury at trial.

*Analysis*

On appeal, both Appellant Currie and Appellant Newbern insist that the evidence was insufficient to sustain the conviction. Specifically, Appellant Newbern claims that there was "absolutely no evidence" that he possessed the cocaine because he was outside of the house when officers arrived and was not linked to the drugs by any of the testimony at trial. Appellant Currie also claims that there was no evidence he possessed the drugs or lived at the residence in question. The State, on the other hand, insists that the evidence showed that Appellants resided in the home at 611 Peabody, possessed two bags of cocaine that weighed over .5 grams, possessed digital scales that contained cocaine residue, and had a handgun and cash.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d

253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellants were convicted of possession of cocaine that weighed .5 grams or more, a violation of Tennessee Code Annotated section 39-17-417(a)(4), which makes it a crime to knowingly "possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a class B felony if the amount of the cocaine possessed is more than .5 grams. T.C.A. § 39-17-417(c)(1).

"[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). A conviction for possession of drugs may be based upon either actual or constructive possession. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Before a person can be found to constructively possess a drug, it must appear that the person has 'the power and intention at any given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Id.* (*citing State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981); *see also State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997) (quoting *United States v. Craig*, 522 F.2d 29 (6th Cir. 1975)). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person

possessed the drugs. *Id.* However, as stated above, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). Further, it is permissible for the jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together. T.C.A. § 39-17-419; *see also State v. Willie Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD, 2002 WL 927604, at *2 (Tenn. Crim. App., at Jackson, May 3, 2002), *perm. app. denied*, (Tenn. Oct. 21, 2002) (concluding that jury could infer possession of drugs with intent to sell or deliver from amount of drugs and circumstances surrounding arrest of defendant); *State v. James R. Huntington*, No. 02C01-9407-CR-00149, 1995 WL 134589, at *3-4 (Tenn. Crim. App., at Jackson, Mar. 29, 1995), *perm. app. denied*, (Tenn. July 10, 1995) (determining that jury could infer intent to sell marijuana primarily from large quantity of marijuana in defendant's possession).

In the case herein, the proof at trial in the light most favorable to the State showed that Appellant Currie and Appellant Newbern lived at the residence where the drugs were found. Appellant Currie claimed ownership of the $52 cash that was located under a mattress in a back bedroom of the residence. Additionally, there was clothing found in the bedroom that would have fit Appellant Currie. There was mail found at the residence addressed to Appellant Newbern. Further, there was evidence that Appellant Newbern told police that he and his son, Appellant Currie, lived at the residence. Finally, Mr. Thornton testified that both Appellants lived at the home. The drugs, weighing more than .5 grams, were located inside the residence. Based on the testimony of one of the police officers, the quantity of cocaine found at the residence far surpassed that which would be possessed by the casual user. Additionally, during the search digital scales were found in the kitchen and $52 in cash was found under a mattress. The scales contained cocaine residue. Finally, a handgun was found in the residence. The proof, even without the somewhat contradictory testimony of Mr. Thornton, supports the verdict of guilt. Appellants argue that the evidence must exclude "every other reasonable hypothesis of guilt" in order to support the conviction. After *Dorantes*, this is simply no longer the requirement of the law. 331 S.W.3d at 381. Appellants are not entitled to relief on this issue.

*"Perjured" Testimony of Mr. Thornton*

Appellant Currie separately complains that his conviction was based primarily on the perjured testimony of Mr. Thornton. He claims that the false testimony rendered his trial unfair. The State disagrees.

It is true that the State is prohibited from presenting false testimony. In fact, they have an affirmative duty to correct false testimony presented by their own witnesses. *See State v.*

*Spurlock*, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993). However, in order to obtain a new trial based on false testimony, Appellant Currie would have to establish not only that the State presented false testimony but that the State knew the testimony was false and the testimony was "material." *See State v. Ricky Alexander Nabors*, No. 02C01-9404-CC-00065, 1994 WL 716247, at *2 (Tenn. Crim. App., at Jackson, Dec. 28, 1994).

In the case herein, Mr. Thornton submitted an affidavit prior to trial in which he claimed ownership of the drugs. At trial, however, he testified that he signed the affidavit, actually prepared by Appellant Currie's mother, under pressure from family members. Mr. Thornton insisted that he had no knowledge of the drugs and that the drugs did not belong to him. Then, at the hearing on the motion for new trial, Mr. Thornton testified that he had signed a second affidavit, again denying possession of the drugs. The evidence actually indicates that Mr. Thornton testified truthfully at trial and may have perjured himself in the affidavits that he insisted he was pressured into signing. Without showing that the State knowingly presented false testimony that was material to the conviction, Appellant Currie is not entitled to relief. This issue lacks merit.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE

-8-